Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON SEARS, on behalf of himself and those similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION |
| v. | CLASS ACTION COMPLAINT FOR: |
| CHINA XD PLASTICS COMPANY LIMITED, JIE HAN, TAYLOR ZHANG, LINYUAN ZHAI, HUIYI CHEN, GUANBAO HUANG, and QINGWEI MA. | (1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting<br>(3) Violation of § 14 (d) and 14(a) of the Securities Exchange Act of 1934<br>(4) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff, Aaron Sears ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of China XD Plastics Company Limited ("China XD" or the "Company"), against China XD and the Company's Board of Directors (the "Board" or the "Individual Defendants", collectively with China XD, the "Defendants"), for violations of Sections 14(a) and Section 20(a) of the Exchange Act and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub") (collectively with Parent, "Faith Dawn") as a result of an unfair process for an unfair price, and to enjoin the proposition to take the Company off the NASDAQ and become a privately owned company (the "Proposed Transaction").

2.      Significantly, Engineering Plastics Company Limited, a corporation wholly owned by Defendant and Company Chairman and CEO, Jie Han ("Han"), beneficially owns approximately 50.1%, of the Company's outstanding Common Stock.   Through Engineering Plastics Company Limited, Han controls shares of Company's Class A Common Stock and Class B Common Stock *representing approximately 70% of Company's total voting power.*   In addition Faith Dawn is also wholly owned by Han.

3.      The terms of the Proposed Transaction were memorialized in a June 15, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Faith Dawn and will acquire all of the outstanding shares of common stock of the Company not already beneficially owned by Faith Dawn. China XD public stockholders will receive, in exchange for each share of China XD common stock they own, $1.20 in cash per China XD share.

4.     Thereafter, on June 22, 2020, China XD filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy") with the SEC in support of the Proposed Transaction.

5.     The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient process in which the Board rushed through an inadequate "sales process" in which the only end goal was a sale to Faith Dawn and Han, with no market check for potentially interested third parties conducted at any point.

6.     Such a sales process, or lack thereof, clearly indicates that the only end-goal acceptable to the Defendants was an acquisition of China XD by Faith Dawn and Han.

7.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell China XD without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Faith Dawn without regard for China XD's public stockholders.   Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to China XD stockholders.

8.     Next, it is clear that the Proposed Transaction was engineered by Han to gain complete control over the Company by any means necessary, a goal which, as the Preliminary Proxy reveals, he has had since at least 2017.

9.     In violation of Federal Securities laws and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on June 22, 2020 with the SEC in an effort to solicit stockholders to vote their China XD shares in favor of the

Proposed Transaction. The Preliminary Proxy is materially deficient, deprives China XD's stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties. As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for China XD, provided by China XD to the Special Committee's financial advisor Duff & Phelps, LLC ("Duff & Phelps"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions Duff and Phelps to the Special Committee.

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## **PARTIES**

11.     Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been a China XD stockholder.

12.     Defendant China XD engages in the research, development, manufacture, and sale of modified plastics primarily for automotive applications in the People's Republic of China, and Dubai, the United Arab Emirates. China XD is incorporated under the laws of the State of Nevada and has its principal place of business at No. 9 Dalian North Road, Haping Road Centralized Industrial Park, Harbin Development Zone, Heilongjiang Province, P. R. China. Shares of China XD common stock are traded on the NasdaqGS under the symbol "CXDC."

13.     Defendant Jie Han ("Han") has been a Director of the Company at all relevant times. In addition, Han serves as the Company's Chief Executive Officer ("CEO") and Chairman of the Board.  Through Engineering Plastics Company Limited, an entity wholly owned by Han, Han owns approximately 50.1%, of the Company's outstanding Common Stock and control shares of Company's Class A Common Stock and Class B Common Stock *representing approximately 70% of Company's total voting power.*  Additionally both Parent and Merger Sub are wholly-owned by Han.

14.     Defendant Taylor Zhang ("Zhang") has been a director of the Company at all relevant times.  In addition, Zhang serves as the Company's Chief Financial Officer ("CFO").

15.     Defendant Linyuan Zhai ("Zhai") has been a director of the Company at all relevant times.

16.     Defendant Huiyi Chen ("Chen") has been a director of the Company since January 2, 2020.

17.     Defendant Guanbao Huang ("Huang") has been a director of the Company since January 2, 2020.

18.     Defendant Qingwei Ma ("Ma") has been a director of the Company at all relevant times. In addition, Ma serves as the Company's Chief Operating Officer ("COO") and Chief Technology Officer ("CTO").

19.     Defendants identified in ¶¶ 13 – 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Parent Faith Dawn Limited is a Limited Liability Company incorporated under the Law of the Cayman Islands in Florence.

21.    Non-Party Merger Sub is a Nevada corporation and affiliate of Faith Dawn and Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.  This Court has personal jurisdiction over Defendants because, among other things, the Company maintains its U.S. offices at 500 5th Avenue, Ste. 960, New York, NY 10110 and the Company's stock trades on the NYSE which is headquartered in New York County. The exercise of jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because China XD's principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all other owners of China XD common stock on the date of the announcement

of the Proposed Transaction, and their successors and assigns (excluding Defendants, and any person, firm, trust, corporation or other entity related or affiliated with any of the Defendants)

26.   This action is properly maintainable as a class action for the following reasons.

a.   The Class is so numerous that joinder of all members is impracticable.  As of May 25, 2020, there were 66,948,841 shares of China XD common stock issued and outstanding, likely owned by hundreds if not thousands of non-affiliated China XD public stockholders

b.   There are questions of law and fact that are common to the Class, including:

i.   whether the Individual Defendants breached their fiduciary duties to the Class by entering into the Proposed Transaction, which is unfair to the Company's public stockholders and was entered into as a result of a flawed, inadequate and unfair process;

ii.   whether the Proposed Transaction is unfair to the Class, in that the price is inadequate and unfair and does not reflect the fair value that could be obtained under the circumstances;

iii.   whether the Class is entitled to injunctive relief and/or damages as a result of the wrongful conduct committed by the Defendants; and

iv.   whether the Faith Dawn affiliated Defendants aided and abetted the Individual Defendants' breaches of fiduciary duties;

c.   Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other Class members and Plaintiff has the same interests as the

other Class members.  Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

d.   The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

27.     To the extent Defendants take further steps to effectuate the Proposed Transaction, preliminary and/or final injunctive relief on behalf of the Class as a whole will be entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

28.     In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to act in the best interests of the company's shareholders, including the duty to obtain maximum value under the circumstances. To diligently comply with these duties, the directors may not take any action that:

a.   adversely affects the value provided to the corporation's shareholder's;

b.   will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

c.   contractually prohibits them from complying with their fiduciary duties; and/or

      d.  will provide the directors, executives or other insiders with preferential treatment at the expense of, separate from, the public shareholders, and place their own pecuniary interests above those interests of the company and its shareholders.

29.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of China XD, are obligated to refrain from:

      a.  participating in any transaction where the directors' or officers' loyalties are divided;

      b.  participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the public shareholders of the corporation; and/or

      c.  unjustly enriching themselves at the expense or to the detriment of the public shareholders.

30.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff and the other public shareholders of China XD, including their duties of loyalty, good faith, candor, and due care.  As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their China XD common stock in the Proposed Transaction.

31.    As a result of these breaches of fiduciary duty, the Company's public shareholders will not receive adequate or fair value for their common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

32.     China XD engages in the research, development, manufacture, and sale of modified plastics primarily for automotive applications in the People's Republic of China, and Dubai, the United Arab Emirates. Its modified plastics are used to fabricate various auto components, including exteriors consisting of automobile bumpers, rearview and sideview mirrors, and license plate parts; interiors, such as door panels, dashboards, steering wheels, glove compartments, and safety belt components; and functional components comprising air conditioner casings, heating and ventilation casings, engine covers, and air ducts. The Company also offers engineered plastics and environment-friendly plastics for use in oilfield equipment, mining equipment, vessel propulsion systems, and power station equipment; and polymer composite materials. Its products are also used in high-speed railways, airplanes, ships, and electronic appliances. The Company sells its products through distributors, as well as directly to end customers. China XD was founded in 1985 and is headquartered in Harbin, the People's Republic of China.

33.     The Company has been focusing on the development and production of high polymer materials for more than 30 years and was listed on Nasdaq in 2009 as the first high polymer material enterprise in greater China.

34.     China XD has more than 600 customers, where the Company's main products have occupied the first place in automobile production of polymer materials area in the past five in China. In 2016, China XD had been evaluated to be the Top Hundred Corporations of Chemical Industry in China (no. 40) by CPCIF.

35.    In an October 3, 2019 Press Release, the Company announced a $135,000,000 Facility Agreement with a Bank Consortium led by the Industrial and Commercial Bank of China (Macau) Limited ("ICBC").

36.    Defendant Han spoke on the Agreement in the October 3, 2019 Press Release saying, "Working with a consortium led by ICBC, the world largest commercial bank by assets, speaks volume of the confidence that world leading financial institutions have in our business and brand. This financing will provide additional liquidity and financial stability to our company. We look forward to broader long-term cooperation with ICBC and other banks of the Consortium."

37.    In the Company's Full Year 2019 Financial Results Press Release, June 1, 2020, Defendant Han spoke on the Company's recent financial success saying, "Since the second quarter of 2019, we have achieved revenues by increased sales of new categories of higher-end products of PA66 and PA6 produced with high-priced raw materials with higher selling price in domestic market; and sales of high-priced semi-finished goods in domestic market to accelerate inventory turnover and replenish operating funds. We are pleased to see an overall increase of 45.9% in the average RMB selling price of our products, partially offset the decreased sales volume of 18.8% for the year ended December 31, 2019. At the same time, the Company has achieved a rapid increase of customer orders in non-automobile applications, evidenced by our stable sales growth in several domestic regions."

38.    Additionally, despite having previously provided an allowance of US$62.8 million on the Company's balance sheets as of December 31, 2019, for overdue accounts receivable from the major customer in UAE, due to the customer failing to make payments under the agreed extended repayment plan, the Company more recently stated in a June 1, 2020 conference call on its Full Year 2019 Financial Results that the Company believes that it will be able to collect on the

aforementioned debt "sometime later this year".  Clearly this indicates that the Company's financials are doing even better than previously reported.  This revelation may also indicate that the debt was not properly categorized by the Company initially.

39.    Despite this positive outlook and recent financial success, the Individual Defendants have caused China XD to enter into the Proposed Transaction for insufficient consideration.

### The Flawed Sales Process

40.    As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, namely Defendant Han, and was designed with only one concern in mind – to effectuate a sale of the Company to Faith Dawn.

41.    First, while the Preliminary Proxy indicates that a Special Committee of three "disinterested and independent" directors, consisting of Defendants Zhai, Chen and Huang (which was chaired by Chen), the Preliminary Proxy makes it clear that ultimate decision making authority for both the sales process, and all Company actions, rested solely with Han.

42.    For example, the Preliminary Proxy makes it abundantly clear that the only possible "strategic alternative" to the Proposed Transaction was for the Company to continue as a standalone entity, reiterating Han's position throughout the process that he would neither sell his interest in the Company or participate in any alternative transaction.

43.    In addition, and in cooperation with Han's goals, tacit or otherwise direct, neither the Special Committee nor its financial advisor Duff & Phelps conducted a market check during the sales process.  Such a market check could have more fully fleshed out market interest in the Company, and could have affected the ultimate price that Han and Faith Dawn offered.

44.     Also worrying is the revelation in the Preliminary Proxy that the Proposed Transaction will be funded almost entirely by liquid funds ***held by the Company itself***, and not by Parent, Merger Sub, or Han.  In fact, of the approximate $40 million necessary to cash out all Company stock not owned by Han affiliated entities, only $5 million will come from an equity commitment from Han himself.  The remainder, as revealed in the Preliminary Proxy, is sourced from offshore cash of the Company.  Such a revelation further demonstrates the inadequacy for a sales process without a market check to determine if any entity would be willing to purchase the Company, not using the Company's own capital to do so.

45.     The Preliminary Proxy is also unclear as to the previous attempt by Defendant Han to take the Company private.  The Preliminary Proxy indicates that Defendant Han, along with a consortium of other entities offered to take the Company private in February 2017, but that the consortium, and therefore the previous offer fell apart in October of 2019.  Other than this brief statement there is no relevant information in the Preliminary Proxy regarding this long more than two year time period in which an offer to take the Company private remained open.  Information related to this previous transaction and its affect, if any, on the Proposed Transaction, must be disclosed.

46.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

47.     On June 15, 2020, China XD and Faith Dawn issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **HARBIN, China, June 15, 2020 /PRNewswire/ -- China XD Plastics Company Limited (NASDAQ: CXDC) (the "Company"),** one of China's leading specialty chemical companies engaged in the development, manufacture

and sale of polymer composite materials primarily for automotive applications, today announced that it has entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") with Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub"), a Nevada corporation and a wholly-owned subsidiary of Parent.

Parent is ultimately wholly-owned by Mr. Jie Han (the "Chairman"), the chairman of board of directors and chief executive officer of the Company. The Chairman and XD. Engineering Plastics Company Limited, an entity wholly-owned by the Chairman (the "Chairman SPV", collectively with the Chairman, the "Rollover Stockholders") currently beneficially own 33,065,054 shares of common stock, par value $0.0001 per share, of the Company (the "Common Shares") and 1,000,000 shares of series B preferred stock, par value $0.0001 per share, of the Company (the "Preferred Shares"), representing approximately 70% of the voting power and approximately 50.1% of the share capital of the Company. Parent, Merger Sub and the Rollover Stockholders are collectively referred to as the "Buyer Group".

Pursuant to the Merger Agreement, Parent will acquire all of the outstanding Common Shares of the Company for a cash consideration equal to US$1.2 per share (the "Merger Consideration"). This amount represents a premium of 25% over the Company's closing price of US$0.96 per share as quoted by NASDAQ Global Market (the "NASDAQ") on May 7, 2020, the last trading day prior to the date that the Company received a non-binding "going private" proposal from members of the Buyer Group. The Merger Consideration also represents an increase of approximately 9.1% over the US$1.1 per share initially offered by the Buyer Group in their initial "going-private" proposal on May 7, 2020 and a premium of approximately 15.4% over the Company's closing price of US$1.04 per share on June 12, 2020, the last trading day prior to this press release.

Subject to the terms and conditions of the Merger Agreement, at the effective time of the merger, Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation and a wholly-owned subsidiary of Parent (the "Merger"), and each of the Common Shares issued and outstanding immediately prior to the effective time of the Merger will be cancelled and cease to exist in exchange for the right to receive the Merger Consideration of US$1.2 per share in cash, without interest and net of any applicable withholding tax, except for (i) Common Shares and Preferred Shares held by any of Parent, Merger Sub, the Rollover Stockholders and any of their respective affiliates; (ii) Common Shares held by the Company or any its wholly owned subsidiary (or held in the Company's treasury), and (iii) Common Shares reserved (but not yet allocated) for issuance, settlement and allocation upon exercise or vesting of the Company share awards. Pursuant to Nevada Revised Statutes 92A.390(1), there are no rights

of dissent available to the holders of Common Shares in connection with the Merger.

The Company's board of directors, acting on the recommendation of a special committee of independent and disinterested directors (the "Special Committee"), unanimously approved the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, and resolved to recommend that the Company's stockholders vote to authorize and approve the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger. The Special Committee, which is composed solely of independent directors of the Company who are unaffiliated with any member of the Buyer Group or management of the Company, exclusively negotiated the terms of the Merger Agreement with the Buyer Group with the assistance of its independent financial and legal advisors.

The Merger, which is currently expected to close during the third quarter of 2020, is subject to various closing conditions, including the adoption of the Merger Agreement by the Company's stockholders. Pursuant to the Merger Agreement, adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, by the Company's stockholders requires (i) the affirmative vote (in person or by proxy) of the holders of at least a majority of the voting power of the outstanding Common Shares and Preferred Shares, voting together as a single class, with the holders of Preferred Shares being entitled to an aggregate of 40% of the combined voting power of the entire share capital of the Company, and (ii) the affirmative vote (in person or by proxy) or consent of the holders of at least a majority of the outstanding Preferred Shares, voting as a single class. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement as soon as practicable. If completed, the Merger will, under laws of the State of Nevada, result in the Company becoming a privately-held company and the Common Shares of the Company would no longer be listed on the NASDAQ.

Hogan Lovells is serving as U.S. legal counsel to the Special Committee, Duff & Phelps, LLC is serving as the financial advisor to the Special Committee. Wilson

Sonsini Goodrich& Rosati, Professional Corporation is serving as U.S. legal counsel to the Company.

O'Melveny & Myers LLP is serving as legal advisor to the Buyer Group.

***The Inadequate Merger Consideration***

48.    Significantly, the Company's financial prospects and opportunities for future growth and synergies with Faith Dawn, establish the inadequacy of the merger consideration.

49.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements of the Company in recent years.

50.    For example, the Company has traded as high as $2.44 per share within the past fifty two weeks, a value that is approximately 102% greater than the consideration offered in the Proposed Transaction.

51.    Furthermore, revenue was $373.2 million in the third quarter ended September 30, 2019, representing an increase of $76.0 million, or 25.6%, compared to $297.2 million in the same period of last year. Speaking on those positive results, Defendant Han commented, "During the third quarter of 2019, the Company was able to successfully leverage the increasing customer demand and up-sell its high-end products produced with higher-priced raw materials in China, as well as achieving the rapid increase of customer orders in non-automobile fields, evidenced by our  stable sales growth in several domestic regions. Meanwhile, China XD continued to optimize its management structure and enhancing efficiency, resulting in decreased expenses and enhanced net income. We are pleased with our good results."

52.     Additionally, China XD's future success is likely, given the positive outlook regarding COVID-19's effect on the industry and where Company is going. Defendant Han spoke on Company's outlook on the Full Year 2019 Financial Results Press Release, June 1, 2020, saying, "For 2020, the COVID-19 has caused a sharp fall in production and sales of the Chinese automotive industry, with the risk of supply disruption of some parts of the domestic automobile industry increased. As a result, China XD has responded to start producing raw materials for PPE such as goggles and masks, to help alleviate the pandemic to our communities and mitigate the negative impact of world pandemic on Chinese auto industry. We are committed to complete industrial project for upgrading existing equipment for 100,000 metric tons of engineering plastics by the end of second quarter of 2020, and our Qinling Road Project and Jiangnan Road Project for equipment upgrade and factory revamping by the end of the third quarter of 2020, thus bringing the production capacity in Heilongjiang Campus back to 390,000 MT."

53.     The Company's ability to shift production to diversify and provide at a broader level to a variety of new customers, contributes to the Company progressing its business model and financial success for years to come.

54.     Moreover, post-closure, China XD stockholders will be frozen out of any ownership interest of the Company, foreclosing any chance from reaping any future benefit from their investment in China XD, save for the $1.20 per share, consideration which is not even guaranteed.

55.     Clearly, while the deal will be beneficial to Faith Dawn it comes at great expense to Plaintiff and other public stockholders of the Company.

56.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Faith Dawn at the expense of China XD public stockholders,

which clearly indicates that China XD stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

57.     The Merger Agreement contains certain provisions that unduly benefit Faith Dawn by making an alternative transaction either prohibitively expensive or otherwise impossible. Notably, in the event of termination, the merger agreement requires China XD to pay up to $1 million to Faith Dawn and/or its affiliates, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, China XD must pay this termination fee even if it consummates any competing Superior Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

58.     The Merger Agreement also contains a "No Solicitation" provision that restricts China XD from considering alternative acquisition proposals by, *inter alia*, constraining China XD's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Competing Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

59.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to Faith Dawn and/or its affiliates information in order to match any other offer, thus providing Faith Dawn access

to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Faith Dawn.

60.    These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

61.    Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

62.    The breakdown of the benefits of the deal indicate that China XD insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of China XD.

63.    In particular, the Proposed Transaction will result in the Company becoming wholly-owned by majority stockholder Defendant Han. This is exacerbated by the fact that the majority of the funds being used to secure Defendant Han's going private transaction are coming from the Company itself.

64.    Additionally Defendant Han will remain the Chairman of the surviving entity as well as becoming its Chief Executive Officer ("CEO").

65.    Certain other insiders stand to receive massive financial benefits as a result of the Proposed Transaction as well.  Notably, for example, Defendant Zhai will be cashed out of his position and receive thousands of dollars not shared amongst Plaintiff or other stockholders.

66.    Thus, while the Proposed Transaction is not in the best interests of China XD stockholders, it will produce lucrative benefits for Defendant Han.

***The Materially Misleading and/or Incomplete Preliminary Proxy***

67.    On June 22, 2020, the China XD Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

68.    Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy fails to disclose:

a.    The Preliminary Proxy is unclear as to the specific reasoning regarding why no market check was conducted by the Special Committee or its financial advisor, Duff & Phelps.

b.    The Preliminary Proxy fails to give adequate information as to the reasoning the Special Committee approved of the purchasing funds being comprised mostly of Company funds; and

c.  The Preliminary Proxy is unclear as to the previous attempt by Defendant Han to take the Company private.  The Preliminary Proxy indicates that Defendant Han, along with a consortium of other entities offered to take the Company private in February 2017, but that the consortium, and therefore the previous offer fell apart in October of 2019.  Other than this brief statement there is no relevant information in the Preliminary Proxy regarding this long more than two year time period in which an offer to take the Company private remained open.  Information related to this previous transaction and its affect, if any, on the Proposed Transaction, must be disclosed.

*Omissions and/or Material Misrepresentations Concerning China XD's Financial Projections*

69.     The Preliminary Proxy fails to provide material information concerning financial projections provided by China XD management and relied upon by Duff & Phelps in its analyses. The Preliminary Proxy discloses management-prepared financial projections for the Company which are materially misleading.

70.     The Preliminary Proxy indicates that in connection with the rendering of Duff & Phelps' fairness opinion, Duff & Phelps reviewed, "reviewed a detailed financial projection model for the Company for the years ending December 31, 2020 through December 31, 2025, prepared and provided to Duff & Phelps by the management of the Company, upon which Duff & Phelps has relied, with the Company's and the Special Committee's consent, in performing its analysis."

71.      Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that China XD management provided to the Board, and Duff & Phelps.  Courts have uniformly stated that "projections … are probably among the most highly-

21

prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

72.     With respect to the "*Management Projections*" the Preliminary Proxy fails to disclose:

      a.   All line items used to calculate:

            i.   EBITDA

      b.   A reconciliation of all non-GAAP to GAAP metrics, including:

            i.   EBIT

73.     Additionally, while the Preliminary Proxy makes it clear that the Duff & Phelps relied upon the Company's unlevered free cash flows in conducted a discounted cash flow analysis, the Preliminary Proxy does not disclose the Company's unlevered free cash flows.

74.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

75.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of China XD are unable to properly evaluate the Company's true worth, the accuracy of Duff & Phelps' financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Duff & Phelps*

76.     In the Preliminary Proxy, Duff & Phelps describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

77.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

  a.  The specific inputs and assumptions used to calculate the range of discount rates of 13.50% to 14.50% used, including

     i.  The Company's weighted average cost of capital; and

     ii.  The Company's unlevered free cash flows.

  b.  The specific inputs and assumptions used to calculate the terminal growth rate of 4.00%.

78.     With respect to the *Selected Comparable Company Analysis*, the Preliminary Proxy fails to disclose the following:

  a.  The specific reasoning as for choosing each comparable company;

79.     With respect to the *Selected M&A Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

  a.  The total value of each selected transaction; and

  b.  The specific date on which each selected transaction closed.

80.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

81.     Without the omitted information identified above, China XD's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, China XD's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Stockholders.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

82.     Plaintiff repeats all previous allegations as if set forth in full herein.

83.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders and have acted to put their personal interests ahead of the interests of Company's public shareholders.

84.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in China XD.

85.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of China XD by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of China XD to its public stockholders.

86.    Indeed, Defendants have accepted an offer to sell China XD at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

87.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction.

88.    The Individual Defendants dominate and control the business and corporate affairs of China XD, and are in possession of private corporate information concerning China XD's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of China XD which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

89.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

90.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of China XD's assets and have been and will be prevented from obtaining a fair price for their common stock.

91.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

92.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**Against Defendant China XD**

93.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

94.     Defendant China XD knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

95.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

96.     Plaintiff and the members of the Class have no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**
**Against All Defendants**

97.     Plaintiff repeats all previous allegations as if set forth in full herein.

98.     Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

99.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

100.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

101.    The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

102.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

103.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

104.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide

whether to vote their shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act
### Against The Individual Defendants

105.    Plaintiff repeats all previous allegations as if set forth in full herein.

106.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholder.

107.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

108.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of China XD's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained here.

109.    The Individual Defendants acted as controlling persons of China XD within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause China XD to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled China XD and all of its employees.  As alleged above, China XD is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the

fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for China XD and obtain a transaction which is in the best interests of China XD and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 6, 2020

**BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*